UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANTE ERIC WELLS,

        Petitioner,                Case Number: 2:16-CV-11781

v.                                 HONORABLE ARTHUR J. TARNOW
                                   UNITED STATES DISTRICT JUDGE

SHAWN BREWER,

        Respondent.
_____/

**OPINION AND ORDER GRANTING RESPONDENT'S MOTION
TO DISMISS AND GRANTING CERTIFICATE OF APPEALABILITY**

**I. Introduction**

Petitioner Dante Eric Wells, a state prisoner currently incarcerated at the Parnall Correctional Facility in Jackson, Michigan, filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. He challenges his conviction for armed robbery, Mich. Comp. Laws § 750.529. Respondent has filed a motion to dismiss, arguing that the petition should be denied because it is untimely. The Court finds the petition for a writ of habeas corpus is untimely and grants Respondent's motion. The Court grants Petitioner a certificate of appealability.

**II. Procedural Background**

Petitioner's conviction arises from a robbery at a Subway Restaurant in West Olive, Michigan, on July 28, 2016. Several witnesses testified that a man wearing a ski mask and a hood pulled over his head and carrying what appeared to be a handgun

entered the restaurant sometime between 5:00 p.m. and 7:00 p.m. that day. He took money from an employee and from the cash register and then attempted to leave the restaurant. An employee struck the robber with a baton. The perpetrator was able to flee the restaurant through the back staff entrance. He drove away in a white Dodge pickup truck. A couple of Subway employees chased the vehicle, one threw a baton at it and the other kicked it. Approximately fifteen minutes later, police located a vehicle matching the description of the getaway vehicle in a gas station parking lot a little over a mile from the Subway Restaurant. The next day, a gas station employee contacted police because a bag containing a gun, a hooded sweatshirt, and a hat was found in one of the gas station's outside trash cans. The hooded sweatshirt yielded the only sample sufficient for a DNA profile. The DNA profile from the sweatshirt did not match Petitioner's DNA profile.

A jail informant testified that Petitioner provided him with numerous details about the crime. Petitioner's ex-girlfriend testified that in July 2006, Petitioner drove a white pickup truck owned by someone named Jordan. Petitioner told her that someone had chased him while he was driving the truck and hit the truck with a stick. Jason Jordan testified that he lent Petitioner his mother's white pickup truck on July 28, 2006 at approximately 11:00 a.m. Petitioner told Jordan that he needed $500 by 5:00 p.m. Jordan went to Petitioner's home at approximately 11:30 p.m. that night. Neither Petitioner nor the truck were there. Jordan called Petitioner who said that something had happened with the truck, but he had wiped it clean, and told Jordan to report it as stolen.

2

Following a jury trial in Ottawa County Circuit Court, Petitioner was found guilty of one count of armed robbery. On August 20, 2007, he sentenced to 10 to 50 years' imprisonment.

Petitioner filed an appeal of right in the Michigan Court of Appeals, claiming that the trial court erred in denying a motion to suppress custodial statements, the trial court improperly denied motion for mistrial, Petitioner's sentence violates state and federal constitutions, and Petitioner should have been given credit for time served in jail. The Michigan Court of Appeals affirmed Petitioner's conviction and sentence. *People v. Wells*, 280910, 2009 WL 454955 (Mich. Ct. App. Feb. 24, 2009). Petitioner attempted to file an application for leave to appeal in the Michigan Supreme Court, but on April 22, 2009, the Michigan Supreme Court rejected the application because it was not timely filed. *See* 7/11/16 Affidavit of Larry Royster, Clerk, Michigan Supreme Court, ECF No. 7-14.

On December 2, 2009, Petitioner filed a motion for relief from judgment in the trial court, raising several claims of prosecutorial misconduct, insufficient evidence, and ineffective assistance of counsel. The trial court denied the motion. 1/13/10 Opinion and Order, ECF No. 7-12. The Michigan Court of Appeals denied Petitioner's application for leave to appeal. 11/24/10 Order, ECF No. 7-15. The Michigan Supreme Court also denied leave to appeal. *People v. Wells*, 489 Mich. 990 (Mich. July 25, 2011).

In 2014, Petitioner filed a motion for DNA testing in the trial court. The exact date Petitioner filed this motion is not clear from the record before the Court. It was filed

3

sometime between April 22, 2014 (when Petitioner states he received documents supporting his claim) and June 4, 2014, when the trial court denied the motion. For purposes of this habeas petition, the Court assumes Petitioner filed the motion on the earliest possible date, April 22, 2014. The trial court denied the motion on June 4, 2014, and denied reconsideration on June 18, 2014. ECF No. 7-17, Pg. ID 958, 961. Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals, which was denied on April 8, 2015. 4/8/15 Order, ECF No. 7-17, Pg. ID 935. The Michigan Supreme Court denied leave to appeal on November 24, 2015. 11/24/15 Order, ECF No. 7-18, Pg. ID 965.

Petitioner filed the pending habeas petition on May 9, 2016.

### III. Discussion

Respondent argues that the petition is barred by the one-year statute of limitations. Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, applies to all habeas petitions filed after its effective date, April 24, 1996, and imposes a one-year limitations period for habeas petitions. *See* 28 U.S.C. § 2244(d)(1). A prisoner must file a federal habeas corpus petition within one year of the "date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review . . . or the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(A) & (D). The time during which a prisoner seeks state-court collateral review of a conviction

does not count toward the limitation period. 28 U.S.C. § 2244(d)(2); *Ege v. Yukins*, 485 F.3d 364, 371-72 (6th Cir. 2007). A properly filed application for state post-conviction relief, while tolling the limitation period, does not reset the limitation period at zero. *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003).

Petitioner appealed his conviction to the Michigan Court of Appeals, but not to the Michigan Supreme Court. Michigan Court Rule 7.305(C)(2) allows a defendant fifty-six days from the date of the Michigan Court of Appeals' decision to file an application for leave to appeal. Petitioner's application for leave to appeal to the Michigan Supreme Court was rejected because it was not timely filed. Thus, his conviction became final when the time for seeking such review expired, April 21, 2009. *See Gonzalez v. Thaler*, — U.S. —, 132 S. Ct. 641, 653-54 (2012). The one-year limitations period commenced the following day, on April 22, 2009, and continued to run until December 2, 2009, when Petitioner filed a motion for relief from judgment in the trial court. The motion for relief from judgment tolled the limitations period with 141 days remaining. *See* 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation...."). The limitations period continued to be tolled until July 25, 2011, when the Michigan Supreme court denied Petitioner's application for leave to appeal. The limitations period resumed on July 26, 2011. It continued to run, uninterrupted, until it expired 141 days later, on December 14, 2011.

Petitioner admits that his petition was not timely filed, but argues that his showing of actual innocence excuses the untimeliness. The Supreme Court has held that a showing of actual innocence overcomes AEDPA's statute of limitations. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013). To determine whether a petitioner has satisfied the requirements for establishing a cognizable claim of actual innocence to warrant equitable tolling, the court applies "the same actual innocence standard developed in *Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851 (1995), for reviewing a federal habeas applicant's procedurally defaulted claim." *McCray v. Vasbinder*, 499 F.3d 568, 571 (6th Cir. 2007), *citing Souter*, 395 F.3d at 596. A valid claim of actual innocence requires a petitioner "to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness account, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. "The *Schlup* standard is demanding and permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006) (citation omitted). A court presented with new evidence must consider it in light of "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *Id.*, 547 U.S. at 538 (citation omitted). "Based on this total record, the court must make 'a probabilistic determination about what reasonable, properly instructed jurors would do.'" *Id.* (*quoting Schlup*, 513 U.S. at 329). This standard does not require absolute certainty about the petitioner's guilt or innocence:

> A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt – or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.

*House*, 547 U.S. at 538.

Petitioner's actual innocence claim relates to DNA evidence. First, he argues that additional testing should have been performed on the sweatshirt found in the trash can. DNA testing was performed on these items retrieved from the trash can outside the gas station: swab from ski mask, swab from stocking, ½ sweatshirt tag, and swab from brown gloves. Only the sweatshirt tag yielded a detectible profile. At trial, the jury was informed that the DNA evidence found on the sweatshirt tag did not match Petitioner's DNA profile. Petitioner argues that additional testing should have been performed on the sweatshirt because the original laboratory report prepared by the Forensic Science Division of the Michigan State Police stated that chemical tests indicated the presence of blood on the sweatshirt, but the company that performed the DNA analysis of the tag failed to analyze the potential blood sample. Petitioner argues that if this blood sample had been analyzed it may have identified another culprit and exonerated him. This speculative claim is insufficient to satisfy *Schlup*'s demanding standard for "new reliable evidence" of actual innocence. *Schlup*, 513 U.S. at 329. *Accord Hammond v. Patterson*, No. 12-cv-935, 2014 WL 21617276, *3 (M.D. Ala. May 20, 2014) (speculative possibility that DNA testing of evidence might reveal potentially exculpatory evidence insufficient to satisfy *Schlup*'s actual innocence standard); *Cummings v. Dovey*, No. 07-

7

8144, 2008 WL 4664975, at *5 (C.D. Cal.2008) (finding that claim based on the assertion that DNA testing that had yet to be performed would have revealed another culprit was speculative and did not constitute the "new reliable evidence" needed to support an actual innocence claim).

Second, Petitioner states that, in 2010, the DNA profile obtained from the sweatshirt was matched to an individual, Anthony Carlos Martinez, in the Michigan State Police's CODIS (Combined DNA Indexing System) database. Petitioner argues that this match establishes his actual innocence. Significant evidence presented at trial linked Petitioner to the getaway vehicle, including his own statement that he had wiped the vehicle clean. Testimony also identified a motive for the robbery: Petitioner's friend Jordan testified that on the morning of the robbery Petitioner told Jordan that he needed $500 by that evening. Petitioner's statement to his girlfriend that someone had chased him and thrown a stick at the vehicle while he was driving it, corresponded with the circumstances surrounding the suspect's fleeing the restaurant. In addition, while the contributor of the DNA on the sweatshirt was not identified at trial, the jury was informed that Petitioner was not the contributor of the DNA. The CODIS match does not convince the Court that, when considered in light of all the evidence presented at trial, the match would make it "more likely than not any reasonable juror would have reasonable doubt." *House*, 547 U.S. at 538. The petition is therefore time-barred.

Moreover, even if the petition was not time-barred, Petitioner's sole claim for habeas relief – that he is actually innocent – fails to state a claim upon which relief may

8

be granted. Claims of actual innocence based on newly discovered evidence "have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Id*. In *House v. Bell*, the Supreme Court declined to answer the question left open in *Herrera* – whether a habeas petitioner may bring a freestanding claim of actual innocence. *See House v. Bell*, 547 U.S. 518, 555 (2006) (noting that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional and warrant federal habeas relief if there were no state avenue open to process such a claim").

Citing *Herrera* and *House*, the Sixth Circuit has ruled that a free-standing claim of actual innocence based upon newly-discovered evidence does not warrant federal habeas relief. *See Bowman v. Haas*, No. 15-1485, 2016 WL 612019, *5 (6th Cir. Feb. 10, 2016) (holding that a freestanding claim of actual innocence is not cognizable in a non-capital federal habeas proceeding); *Muntaser v. Bradshaw*, 429 F. App'x 515, 521 (6th Cir. 2011) ("[A]n actual innocence claim operates only to excuse a procedural default so that a petitioner may bring an independent constitutional challenge . . .Given that [petitioner] alleges only a free-standing claim to relief on the grounds of actual innocence, his claim is not cognizable . . . and, accordingly, does not serve as a ground for habeas relief."). Consequently, Petitioner's claim that he is actually innocent and has newly-discovered

9

evidence to prove his innocence fails to state a claim upon which habeas relief can be granted.

## IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings requires that a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11, Rules Governing Section 2255 Proceedings.

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997). To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotes and citations omitted).

Having undertaken the requisite review, the Court concludes that jurists of reason could find debatable whether Petitioner's actual innocence claim excuses his failure to timely file the petition.

## V. Conclusion

The Court finds that Petitioner failed to file his habeas petition within the applicable one-year limitations period. Accordingly, the Court GRANTS Respondent's Motion to Dismiss (ECF No. 6) and the petition for a writ of habeas corpus is DISMISSED.

The Court GRANTS a certificate of appealability. If Petitioner chooses to appeal the Court's decision, he may proceed *in forma pauperis* on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

SO ORDERED.

    S/Arthur J. Tarnow
    Arthur J. Tarnow
    Senior United States District Judge

Dated: March 20, 2017

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on March 20, 2017, by electronic and/or ordinary mail.

    S/Catherine A. Pickles
    Judicial Assistant